Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| **RAMÓN MARÍA SEGURA Y OTROS**<br><br>Parte apelante<br><br>v.<br><br>**NODUS INTERNATIONAL BANK, INC. Y OTROS**<br><br>Parte apelada | **TA2026AP00202** | ***APELACIÓN***<br>procedente del<br>Tribunal de Primera Instancia Sala Superior de **San Juan**<br><br>Caso Número:<br>**SJ2023CV06246**<br><br>Sobre:<br>**INCUMPLIMIENTO DE CONTRATO COBRO DE DINERO DAÑOS** |

Panel integrado por su presidente, el Juez Sánchez Ramos, la Jueza Romero García y el Juez Pérez Ocasio.

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 8 de abril de 2026.

Comparece ante nos, Ramón María Segura y otros, en adelante, los apelantes o la parte apelante, y nos solicita que revisemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, en adelante TPI-SJ, el 15 de diciembre de 2025 y archivada en autos copia de la notificación el 16 de diciembre de 2025. Mediante esta, el Foro Apelado desestimó la demanda de epígrafe por supuesta falta de legitimación activa.

Por los fundamentos que expondremos a continuación, se *revoca* la *Sentencia* apelada.

**I.**

El 27 de junio de 2023, la parte apelante presentó una demanda sobre incumplimiento de contrato, daños y perjuicios y cobro de dinero en contra de Nodus International Bank, Inc.[1], en

---

[1] Nodus es una entidad bancaria internacional (EBI), organizada bajo las leyes de Puerto Rico, con una licencia expedida por la Oficina del Comisionado de Institución Financiera (OCIF) para operar desde la jurisdicción de Puerto Rico al amparo de la intitulada *Ley Reguladora del Centro Bancario Internacional,* Ley Núm. 52 de 11 de agosto de 1989, según enmendada, 7 LPRA sec. 232 *et seq.*

adelante, Nodus.[2] En suma, alegaron que suscribieron contratos de depósito con la institución bancaria y que esta incumplió con sus obligaciones al negarse a transferir o devolver los fondos depositados.[3]

El 23 de octubre de 2023, Nodus presentó una moción informativa mediante la cual notificó la existencia de una *Querella y Orden Provisional y Permanente para el Nombramiento de un Síndico y Revocación de Licencia* (Querella y Orden)[4] emitidas por la Oficina del Comisionado de Institución Financiera, en adelante, OCIF, mediante las cuales se revocó la licencia de la institución y se inició un proceso de liquidación con el nombramiento de un síndico, Driven Advisors, P.S.C., en adelante Driven.[5]

Posteriormente, el 4 de noviembre de 2024, Nodus presentó su *Contestación a la Demanda*. En esta admitió la existencia de los contratos de depósito y las cantidades presuntamente depositadas, aunque negó responsabilidad y alegó que sus actuaciones estaban sujetas al proceso de liquidación supervisado por la OCIF.[6]

Tras varias incidencias procesales, el 23 de junio de 2025, Nodus presentó una moción de desestimación por falta de parte indispensable. Sostuvo que las reclamaciones instadas por los demandantes se originan en la conducta de los accionistas de la institución bancaria, y que la ausencia de estos impedía la adjudicación completa de la controversia.[7]

El 9 de julio de 2025, Driven, en su carácter de síndico de Nodus, presentó una moción de intervención en la cual alegó que las causas de acción instadas corresponden exclusivamente al síndico.[8] Añadió a su moción, una solicitud de desestimación, en la

---

[2] Entrada 1 de SUMAC TA, apéndice 1.
[3] *Íd.*
[4] Entrada 11 de SUMAC TPI, anejo 1.
[5] Entrada 11 de SUMAC TPI.
[6] Entrada 1 de SUMAC TA, apéndice 31.
[7] Entrada 44 de SUMAC TPI.
[8] Entrada 1 de SUMAC TA, apéndice 50.

cual sostuvo que los demandantes carecen de legitimación activa, toda vez que la OCIF le delegó facultades exclusivas para recobrar y administrar los fondos de los depositantes. Argumentó, además, que las reclamaciones instadas eran de naturaleza derivativa, por surgir de las alegadas actuaciones ilícitas de los accionistas de la institución bancaria, y que cualquier adjudicación individual interferiría con el proceso de liquidación ordenado por la OCIF.[9]

En respuesta, el 14 de julio de 2025, la parte apelante presentó su oposición a la solicitud de desestimación presentada por Nodus, y sostuvo que la relación contractual existe exclusivamente entre los demandantes y la institución bancaria, y que los accionistas señalados no constituían partes indispensables.[10]

El 13 de agosto de 2025, la parte apelante presentó su oposición a la solicitud de intervención y desestimación presentada por Driven. En esta, reiteró la naturaleza contractual y directa contra la institución bancaria, y que la OCIF carecía de jurisdicción para adjudicar controversias de esta índole o conceder daños.[11] El 15 de agosto de 2025, el TPI-SJ emitió una *Resolución* en la cual permitió la intervención de Driven como síndico de Nodus.[12]

Posteriormente, el 15 de diciembre de 2025, el foro primario emitió una *Sentencia* mediante la cual declaró *con lugar* la moción de desestimación presentada por Driven y desestimó la demanda presentada por falta de legitimación activa, al concluir que las reclamaciones pertenecen exclusivamente al síndico en el contexto del proceso de liquidación.[13]

Inconforme, el 7 de enero de 2026, la parte apelante presentó una reconsideración en la cual alegó que el TPI-SJ erró al privarlos de legitimación activa sin fundamento legal expreso, al atribuir a la

---

[9] Entrada 1 de SUMAC TA, apéndice 50.
[10] Entrada 54 de SUMAC TPI.
[11] Entrada 1 de SUMAC TA, apéndice 63 y 65.
[12] *Íd.,* apéndice 64.
[13] *Íd.,* apéndice 67.

OCIF una jurisdicción que no surge de su ley habilitadora, y al clasificar incorrectamente la acción como una de naturaleza derivativa.[14]

En respuesta, el 20 de enero de 2026, Driven presentó su oposición a la reconsideración, en la cual sostuvo que la solicitud presentada por la parte apelante no exponía fundamentos nuevos que justificara alterar la *Sentencia*, y reiteró que las reclamaciones instadas correspondían exclusivamente al síndico, en virtud de las facultades conferidas por la OCIF dentro del proceso de liquidación.[15] El 26 de enero de 2026, el TPI-SJ denegó la solicitud de reconsideración de la parte apelante.[16]

Aún inconforme, el 25 de febrero de 2026, la parte apelante recurrió ante nos mediante un recurso de apelación[17], en el cual realizó los siguientes señalamientos de error:

> **PRIMER ERROR:** Erró el TPI al determinar que el proceso de liquidación de Nodus privaba a los apelantes de legitimación activa cuando OCIF no tiene jurisdicción alguna para intervenir en controversias sobre contratos de depósito y en ausencia de una disposición específica al respecto en las leyes aplicables.

> **SEGUNDO ERROR:** Erró el TPI al desestimar la acción en daños y perjuicios de los apelantes al dejarlos desprovistos de foro alguno para presentar su reclamo, ya que el propio TPI es el único foro que puede otorgar daños por las reclamaciones específicas de los apelantes.

> **TERCER ERROR:** Erró el TPI al determinar que las reclamaciones de los apelantes eran acciones derivativas sin estos ser accionistas de Nodus ni reclamar cosa alguna en beneficio del banco internacional.

El 27 de marzo de 2026, Driven, presentó su oposición al recurso de apelación, y solicitó la confirmación de la *Sentencia* apelada.[18] En síntesis, sostuvo que el TPI-SJ actuó correctamente al desestimar la demanda por falta de legitimación activa, que las reclamaciones de los apelantes deben tramitarse dentro del proceso

---

[14] Entrada 1 de SUMAC TA, apéndice 68.
[15] *Íd.,* apéndice 71.
[16] *Íd.,* apéndice 73.
[17] Entrada 1 de SUMAC TA.
[18] Entrada 3 de SUMAC TA.

de liquidación ante la OCIF, y que la acción instada interfiere con las facultades exclusivas delegadas al síndico para la recuperación y distribución de los activos de la institución bancaria.

Perfeccionado el recurso de autos, nos encontramos en posición de resolver.

## II.

### A. Apelación Civil

Las Reglas de Procedimiento Civil de Puerto Rico se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio, entiéndase las alegaciones, mociones, descubrimiento de prueba, vista evidenciaria, sentencia, reconsideración, apelación, y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea*, 145 DPR 236, 238 (1998).

La apelación no es un recurso discrecional como en los casos de *certiorari*. Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles*, 142 DPR 241, 252 (1997). En ese sentido, reconocemos que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell*, 199 DPR 311, 317 (2017).

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *W.M.M. P.F.M., et al. v. Colegio et al.*, 211 DPR 871, 902-903 (2023); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-771 (2013); *Serrano Muñoz v. Auxilio*

*Mutuo*, 171 DPR 717, 741 (2007). De manera que, si la actuación del tribunal no está desprovista de base razonable, ni perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de instancia a quien corresponde la dirección del proceso. *Bathia Gautier v. Gobernador*, 199 DPR 59, 182 (2017); *Sierra v. Tribunal Superior,* 81 DPR 554, 572 (1959).

Sin embargo, la norma de deferencia esbozada encuentra su excepción y cede cuando la parte promovente demuestra que hubo un craso abuso de discreción, prejuicio, error manifiesto o parcialidad. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 710 (2012). Además, se requiere que nuestra intervención en esta etapa evite un perjuicio sustancial. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Por discreción se entiende el "tener poder para decidir en una forma u otra, esto es, para escoger entre uno o varios cursos de acción". *García v. Asociación*, 165 DPR 311, 321 (2005), citando a *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990). No obstante, "el adecuado ejercicio de la discreción está inexorable e indefectiblemente atado al concepto de la razonabilidad". *Íd.* A esos efectos, el Tribunal Supremo de Puerto Rico ha indicado cuáles son situaciones que constituyen un abuso de discreción, a saber:

> [C]uando el juez, en la decisión que emite, no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando por el contrario el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez livianamente sopesa y calibra los mismos. *Ramírez v. Policía de P.R.*, 158 DPR 320, 340-341 (2002), citando a *Pueblo v. Ortega Santiago*, supra, págs. 211-212. Así, pues, la discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del derecho.
> *Rivera et al. v. Arcos Dorados et al.*, supra.

**B. Desestimación**

Los tribunales poseen la autoridad para desestimar una demanda, lo cual deben realizar de manera juiciosa y en

circunstancias apropiadas. *VS PR, LLC v. Drift-Wind*, 207 DPR 253, 264 (2021); *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 298 (2012). Ello pues, se cataloga que la desestimación constituye la sanción máxima, o la pena de muerte procesal, contra una parte; en especial cuando la misma tiene el efecto de adjudicar un pleito en sus méritos. *VS PR, LLC v. Drift-Wind*, supra, citando a R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, pág. 250.

Por tanto, desestimar un pleito desmesuradamente privaría al demandante de su día en corte para ejercer efectivamente aquellas causas de acción que tenga en contra de otra parte. *VS PR, LLC v. Drift-Wind*, supra. Además, tal proceder colisionaría contra la política pública que favorece la ventilación de los casos en sus méritos. *VS PR, LLC v. Drift-Wind*, supra; *HRS Erase v. CMT*, 205 DPR 689, 701 (2020).

En nuestro ordenamiento jurídico civil, la desestimación se encuentra contemplada en varias de la Reglas de Procedimiento Civil. En primer orden, la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, permite que una parte demandada en un pleito solicite la desestimación de la demanda presentada en su contra. *BPPR v. Cable Media*, 2025 TSPR 1, 215 DPR __ (2025); *Díaz Vázquez et al. v. Colón Peña et al.*, 214 DPR 1135, 1149 (2024); *González Méndez v. Acción Social de Puerto Rico*, 196 DPR 213, 234 (2016).

La precitada Regla dispone que dicha parte puede presentar una moción fundamentada en las siguientes defensas: (1) la falta de jurisdicción sobre la materia; (2) la falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; **(5) dejar de exponer una reclamación que justifique la concesión de un remedio** y; (6) dejar de acumular una parte indispensable. *Rodríguez Vázquez et als. v. Hosp. Auxilio Mutuo*, 2025 TSPR 55, 215 DPR ___ (2025); *Díaz*

*Vázquez et al. v. Colón Peña et al.*, supra; *Inmob. Baleares, et al. v. Benabe et al.*, 214 DPR 1109, 1128 (2024); *Rivera, Lozada v. Universal*, 214 DPR 1007, 1023 (2024); *Blassino, Reyes v. Reyes Blassino*, 214 DPR 823, 833 (2024); *Costa Elena y otros v. Magic Sport y otros*, 213 DPR 523, 533 (2024).

Para que proceda una moción al amparo de la Regla 10.2, *supra*, el Foro Primario deberá tomar como ciertos todos los hechos alegados en la demanda y considerarlos de la manera más favorables a la parte demandante. *Díaz Vázquez et al. v. Colón Peña et al.*, supra, pág. 1150; *Inmob. Baleares, et al. v. Benabe et al.*, supra, págs. 1128-1129; *Rivera, Lozada v. Universal*, supra; *Blassino, Reyes v. Reyes Blassino*, supra, págs. 833-834; *Costa Elena y otros v. Magic Sport y otros*, supra, pág. 533; *Eagle Security v. Efrón Dorado et al.*, 211 DPR 70, 84 (2023). Es decir, al momento de evaluar esta moción de desestimación, los tribunales deberán examinar los hechos alegados en la demanda de forma conjunta y de la forma más liberal posible a favor de la parte demandante. *Morales et al. v. Asoc. Propietarios*, 214 DPR 284, 291 (2024); *Inmob. Baleares, et al. v. Benabe et al.*, supra; *Cruz Pérez v. Roldán Rodríguez et al.*, 206 DPR 261, 267 (2021).

Así, la norma prevaleciente dicta que los tribunales gozan de discreción para decretar que la desestimación de una demanda sea *sin perjuicio*, la cual habilita una presentación posterior de la misma reclamación, excepto cuando tal pronunciamiento se fundamente en la falta de jurisdicción o la falta de parte indispensable, o que de otro modo exista alguna norma que disponga otro efecto. *VS PR, LLC v. Drift-Wind*, supra, págs. 266- 267; *Souchet v. Cosío*, 83 DPR 758, 762-763 (1961).

### C. Contrato de Depósito

La *Ley de Bancos de Puerto Rico*, Ley Núm. 55 de 12 de mayo de 1933, según enmendada, define el "certificado de depósito" como

aquel depósito evidenciado por "recibo, acuerdo escrito, tarjetas perforadas, cinta magnética, fotografías, microfotografías, archivos de computadoras o cualquier otro medio de almacenaje de información", siempre que del expediente surja el término por el cual se efectuó el depósito y que este "tendrá que ser cancelado por el banco al momento de su cobro". Sección 3(j) de la Ley de Bancos, 7 LPRA sec. 3(j). No obstante, dicha definición no altera la naturaleza jurídica de la relación entre la institución bancaria y el depositante.

En reiteradas ocasiones, el Tribunal Supremo ha resuelto que la relación entre un Banco y su depositante no constituye un contrato de depósito en su acepción civil, sino una relación obligacional de acreedor y deudor que se enmarca en el contrato de préstamo. Así, ha expresado que "la relación que se crea entre un Banco y un depositante, al constituirse un certificado de depósito, es una relación de acreedor y deudor, y no de depositario y depositante, por lo que el contrato entre ambos es de préstamo y no de depósito", *Torres, Torres v. Torres Serrano*, 179 DPR 481, 491 (2010); y que "el establecimiento de una cuenta corriente queda enmarcado dentro de la figura del contrato de préstamo y no de depósito", *BBVA v. S.L.G. López Sasso*, 168 DPR 700, 710 (2006); *Portilla v. Banco Popular*, 75 DPR 100, 113 (1953).

De igual forma, nuestro más Alto Foro ha expresado que "la relación de acreedor y deudor entre un Banco y un depositante es un contrato de préstamo que se rige por las disposiciones del Código Civil". *Santos de García v. Banco Popular*, 172 D.P.R. 759, 774 (2007); *Portilla v. Banco Popular*, supra, pág. 126.

El Código Civil de Puerto Rico de 2020 dispone, al definir el contrato de depósito, que "[p]or el contrato de depósito, el depositario se obliga a recibir un bien para custodiarlo y restituirlo con sus frutos cuando lo solicite el depositante". Artículo 1454 del Código Civil de 2020, 31 LPRA sec. 10511. No obstante, el propio

Código aclara expresamente que "[l]as disposiciones de este Capítulo no son aplicables al depósito bancario". Artículo 1455 del Código Civil de 2020, 31 LPRA sec. 10512.

A tono con lo anterior, el Código Civil establece que "[c]uando el depositante autoriza que el depositario use el bien, el depósito se convierte en comodato o en préstamo, según las circunstancias". Artículo 1456 del Código Civil de 2020, 31 LPRA sec. 10513. Esa norma es cónsona con la jurisprudencia antes citada, la cual ubica la relación Banco–depositante en el ámbito del préstamo.

Como consecuencia de dicha relación jurídica, el depositante no conserva un derecho real sobre el dinero entregado, sino un derecho de crédito frente al Banco. En ese sentido, el Tribunal Supremo ha indicado que:

> el depositante pierde la propiedad de las sumas depositadas, pues no existe —como lo sería en el caso de un contrato de depósito— el derecho a reivindicar el objeto depositado, "sino solamente un derecho de crédito contra el depositario". Recordemos que el depositante le entrega al banco un bien fungible y el banco entonces "adquiere la obligación de restituir otro tanto de la misma especie y calidad ...". (Citas omitidas) *BBVA v. S.L.G. López Sasso*, supra, pág. 711.

De igual modo, ha descrito el certificado de depósito como "un documento que se utiliza para manifestar que una persona ha entregado cierta cantidad de dinero a un Banco, y que éste último tiene el deber y la obligación de devolver esa cantidad en el término pactado a tal persona o a su tenedor", *Torres, Torres v. Torres Serrano,* supra, pág. 488.

En virtud de lo anterior, la reclamación dirigida a exigir la restitución de los fondos depositados constituye una acción personal de naturaleza contractual, regida por las disposiciones del Código Civil en materia de obligaciones y contratos. Así lo ha reconocido el Tribunal Supremo al indicar que "como la relación entre el Banco y el depositante es de acreedor-deudor, reconocimos que ésta ha de regirse por el Código Civil", y que, en ausencia de legislación especial aplicable, "aplicará lo relacionado al contrato

especial de préstamo y supletoriamente las disposiciones generales de las obligaciones y los contratos del Código Civil", *Torres, Torres v. Torres Serrano,* supra, pág. 492. A su vez, dichas obligaciones tienen fuerza vinculante entre las partes, y deben cumplirse según éstos. *Torres, Torres v. Torres Serrano*, supra, pág. 493. Véase, además, Artículo 1233 del Código Civil de 2020, 31 LPRA. sec. 9754.

### D. Facultades de la OCIF

Ahora bien, el hecho de que las instituciones bancarias estén sujetas a un esquema regulatorio especial no altera la naturaleza privada de esta relación contractual. La Oficina del Comisionado de Instituciones Financieras, en adelante OCIF, creada mediante la intitulada *Ley de la Oficina del Comisionado de Instituciones Financieras*, Ley Núm. 4 de 11 de octubre de 1985, según enmendada, en adelante Ley Núm. 4-1985, tiene la "responsabilidad primordial de fiscalización y supervisión de las instituciones financieras". Artículo 3 de la Ley Núm. 4-1985, 7 LPRA. sec. 2003. Asimismo, cuenta con facultades para reglamentar, investigar, inspeccionar, emitir órdenes administrativas, imponer sanciones y, en circunstancias específicas, nombrar un síndico y dirigir procesos de liquidación. Artículo 10 de la Ley Núm. 4-1985, 7 LPRA sec. 2010; véanse también las Secciones 28, 30 y 31 de la Ley de Bancos, 7 *supra,* secs. 151, 201 y 202.

Sin embargo, dichas facultades se circunscriben al ámbito administrativo, fiscalizador y supervisor de las instituciones financieras, y *no comprenden la adjudicación de controversias contractuales privadas entre el banco y sus depositantes*. Sobre este particular, el Tribunal Supremo ha sido categórico al señalar que "la Ley de Bancos de Puerto Rico no define la naturaleza de la relación entre banco y depositante, y se limita a establecer la reglamentación del aspecto jurídico administrativo de los Bancos [...] La ley deja fuera de su ámbito el régimen de contratos y sus relaciones

privadas", *Santos de García v. Banco Popular*, supra, pág. 770; *BBVA v. S.L.G. López Sasso*, supra, pág. 710. De igual forma, ha indicado que dicha legislación "no reconoce o establece una causa de acción individual o privada contra un banco por su incumplimiento", *Santos de García v. Banco Popular*, supra, pág. 772.

Por otro lado, la intitulada *Ley Reguladora del Centro Bancario Internacional*, Ley Núm. 52 de 11 de agosto de 1989, según enmendada, en adelante Ley Núm.52-1989, 7 LPRA sec. 232 et seq., en conjunto con la Ley Núm. 4-1985, confiere a la OCIF amplias facultades para supervisar, fiscalizar y examinar las entidades bancarias internacionales, así como para velar por su solidez financiera y cumplimiento con las leyes y reglamentos aplicables.

En virtud de dicho marco normativo, la OCIF puede, entre otras cosas, investigar, auditar, imponer sanciones, suspender o revocar licencias, y, de ser necesario, colocar a una entidad en sindicatura y ordenar su liquidación. Véanse, 7 LPRA secs. 232a, 232n y 232o.

No obstante, dichas facultades están dirigidas al ámbito regulatorio, fiscalizador y administrativo de las instituciones financieras, incluyendo su organización, operación y eventual liquidación. En particular, la propia Ley dispone que la revocación de una licencia o el proceso de disolución no afecta "las obligaciones derivadas de cualquier contrato válido existente entre la entidad bancaria internacional y otras personas". 7 LPRA. sec. 232n(c).

### E. Legitimación Activa

El concepto legitimación activa se ha desarrollado en la jurisdicción federal al amparo del Artículo III de la Constitución de los Estados Unidos. Su fundamento descansa en que los tribunales federales sólo atienden controversias judiciales, y no pueden ofrecer opiniones consultivas. *Food and Drug Administration v. Alliance for Hippocratic Medicine*, 602 US 367, 378 (2024); *Carney v. Adams*, 592

US 53, 58 (2020). Al igual que ocurre en la jurisdicción federal, en Puerto Rico, la revisión judicial solo puede ejercerse en un caso o controversia. *Rivera et al. v. Torres et al.*, 214 DPR 111, 133-134 (2024); *Hernández Montañez v. Parés Alicea*, 208 DPR 727, 738 (2022); *Aponte Rosario et al. v. Pres. CEE*, 205 DPR 407, 452 (2020); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 932 (2011); *Fund. Surfrider y otros v. ARPe*, 178 DPR 563, 571 (2010); *Romero Barceló v. ELA*, 169 DPR 460, 475 (2006); *E.L.A. v. Aguayo*, 80 DPR 552, 558–559 (1958).

Como elemento esencial para la adjudicación de los méritos de una controversia, el principio de justiciabilidad impone a los tribunales el deber de examinar si la parte que acude a su auxilio ostenta legitimación activa para actuar de conformidad. *Rivera et al. v. Torres et al.*, supra, pág. 132; *Hernández, Santa v. Srio. de Hacienda*, 208 DPR 727, 738-739 (2022). Esta figura se define como "la capacidad que se le requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante". *DACo v. LUMA Energy, 2025 TSPR 126*, 216 DPR __ (2025). *Bhatia Gautier v. Gobernador*, 199 DPR 59, 69 (2017). El propósito de la legitimación activa es que el tribunal se asegure de que la parte reclamante tiene un interés genuino, va a perseguir su causa vigorosamente y que todos los asuntos pertinentes serán presentados ante la consideración del juzgador. *Pérez Rodríguez v. López Rodríguez et al.*, 210 DPR 163, 178-179 (2022). Así, la parte que solicita un remedio judicial debe demostrar que: (1) ha sufrido un daño claro y palpable; (2) el daño es real, inmediato y preciso, no abstracto o hipotético; (3) existe una conexión entre el daño y la causa de acción ejercitada, y (4) la causa de acción surge al palio de la Constitución. DACo v. LUMA Energy, *supra; Hernández Montañez v. Pares Alicea*, supra, pág. 739; *Bhatia Gautier v. Gobernador*,

supra, pág. 69; *Fund. Surfrider y otros v. A.R.Pe.,* supra, pág. 572; *Sánchez et al. v. Srio. de Justicia et al.,* 157 DPR 360, 371 (2002).

### F. Acción Derivativa

La *acción derivativa* constituye un remedio de naturaleza equitativa mediante el cual un accionista comparece en representación de la corporación para vindicar derechos que le pertenecen a esta y que sus administradores han dejado de reclamar. En ese sentido, no se trata de una acción para hacer valer derechos individuales del accionista, sino aquellos que corresponden a la entidad corporativa. *Multinational Ins. v. Benítez y otros,* 193 DPR 67, 79 (2015); *Rivera Sanfeliz et al v. Jta Dir. First Bank,* 193 DPR 38, 55 (2015).

Por su propia naturaleza la *acción derivativa* requiere que quien la inste ostente la condición de accionista y actúe en beneficio de la corporación. A esos efectos, la Ley General de Corporaciones exige que el promovente alegue específicamente su carácter de accionista. Art. 12.06 de la Ley Núm. 164-2009, 14 LPRA sec. 3786. Asimismo, nuestro Tribunal Supremo ha reiterado que una persona que no sea accionista carece de legitimación activa para instar una acción derivativa. *Multinational Ins. v. Benítez,* supra, pág. 80.

De igual forma, este tipo de acción tiene como propósito remediar daños sufridos por la corporación, no por terceros en su carácter personal, por lo que cualquier remedio obtenido redunda en beneficio de la entidad corporativa y no del promovente individual. *Multinational Ins. v. Benítez,* supra, pág. 79; *Rivera Sanfeliz et al. v. Junta Dir. First Bank,* supra, págs. 54-55.

En consecuencia, la *acción derivativa* no resulta aplicable a reclamaciones instadas por terceros que no ostentan la condición de accionistas ni persiguen la vindicación de derechos corporativos, sino la protección de intereses propios y directos.

**III.**

Por su estrecha relación procede discutir conjuntamente los tres (3) señalamientos de error.

La parte apelante sostiene que el Tribunal de Primera Instancia, *erró* (1) al resolver que carecía de legitimación activa para instar la presente acción; (2) al concluir que la facultad para reclamar los fondos correspondía exclusivamente al síndico designado; y (3) al catalogar su acción como una derivativa. *Le asiste la razón.*

Surge del expediente que la OCIF emitió una orden mediante la cual revocó la licencia de Nodus y designó a Driven como síndico con el propósito de administrar y culminar el proceso de liquidación de la entidad. Asimismo, dicha orden responde a un escenario en el cual la institución no se encontraba en condiciones de continuar operando y, por ende, se activó un mecanismo administrativo para manejar sus activos, pasivos y operaciones.

Ahora bien, el alcance de ese proceso resulta determinante. Del propio contenido de la orden administrativa se desprende que el síndico asume funciones dirigidas a administrar la entidad, manejar sus bienes, atender sus obligaciones y ejecutar el plan de liquidación. Sin embargo, en ninguna parte de dicho esquema se dispone que el síndico sustituye a los depositantes como titulares de sus reclamaciones personales ni que absorbe las causas de acción contractuales que estos puedan tener contra la institución.

A pesar de ello, el foro primario concluyó que, como consecuencia de la sindicatura, los apelantes quedaron privados de legitimación activa y que cualquier reclamación sobre los fondos debía canalizarse exclusivamente a través del síndico. *Esa conclusión es incorrecta.*

En el caso de autos, los apelantes no comparecieron a reclamar bienes pertenecientes al Banco ni a vindicar derechos

corporativos. Comparecieron como titulares de cuentas y depósitos específicos, alegando que entregaron fondos a la institución y que estos no les fueron restituidos. Bajo ese cuadro, su reclamación es una personal, directa e independiente, cuyo titular es el propio depositante.

El error del Tribunal de Primera Instancia consistió en confundir dos planos jurídicos distintos: por un lado, la facultad del síndico para administrar y liquidar los activos de la institución bancaria; y por otro, la titularidad de las reclamaciones individuales de los depositantes frente al Banco. El hecho de que exista un proceso de liquidación no convierte al síndico en acreedor de los depósitos ni desplaza automáticamente el derecho de los depositantes a reclamar el incumplimiento de la obligación de restitución.

Ese mismo error incide en el *segundo señalamiento*. La desestimación de la demanda bajo el fundamento de que la controversia debía ventilarse dentro del proceso de liquidación tuvo el efecto de remover indebidamente la controversia del foro judicial. No obstante, del propio contenido de la orden administrativa surge que el proceso de la OCIF está diseñado para atender la administración y distribución de los activos de la institución, así como para canalizar reclamaciones dentro de ese esquema. De dicha orden no surge que la OCIF ni el síndico tengan facultad para adjudicar controversias contractuales privadas entre la institución bancaria y sus depositantes, ni para conceder remedios en daños y perjuicios.

En este caso, la reclamación del depositante para exigir la restitución de sus fondos y los daños derivados del incumplimiento de dicha obligación constituye una acción personal, directa y contractual, cuya adjudicación corresponde a los tribunales de justicia. Dicha controversia no podía ser desplazada al ámbito

adjudicativo de la OCIF. Al así hacerlo, el foro primario dejó a los apelantes sin un foro capaz de atender integralmente su causa de acción. Ese resultado es incompatible con la naturaleza de la reclamación instada.

Asimismo, al evaluar la moción de desestimación, el foro primario venía obligado a asumir como ciertos los hechos alegados en la demanda. Bajo ese estándar, no podía concluir que los apelantes carecían de un remedio en derecho. Por el contrario, las alegaciones describen una reclamación clásica de cobro de dinero e incumplimiento contractual. Por ello, la desestimación no procedía.

Finalmente, el foro primario también erró al catalogar la acción como una derivativa. Los apelantes no alegaron ser accionistas, ni actuaron en representación de la institución, ni procuraron un remedio a favor del Banco. Su reclamación se circunscribe a la devolución de sus propios fondos y a los daños sufridos individualmente.

El hecho de que la insolvencia o iliquidez de Nodus pueda estar vinculada a actuaciones de sus directivos o terceros no transforma la naturaleza de la acción instada. Esa circunstancia podría dar lugar a otras causas de acción, pero no altera la naturaleza directa de la reclamación de los depositantes.

A la luz de lo anterior, concluimos que el foro primario erró al: (1) concluir que los apelantes carecían de legitimación activa sobre una reclamación que les pertenece directamente; (2) desplazar indebidamente la controversia al ámbito del proceso administrativo de liquidación; y (3) calificar incorrectamente la acción como una derivativa. La demanda expone una reclamación que justifica la concesión de un remedio y debía permitirse su continuación en el foro judicial.

**IV.**

Por los fundamentos que anteceden, se **revoca** la *Sentencia* apelada; y se devuelve el caso al Tribunal de Primera Instancia para trámites ulteriores compatibles con lo aquí resuelto y expuesto.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones